[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2006
THOMAS K. KAHN
CLERK

No. 05-11745
Non-Argument Calendar
_____

D. C. Docket No. 04-20203-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FABIAN CORRIETTE,
a.k.a. Fabe,
a.k.a. Fave,
DARRAN LAMAR MOORE,
a.k.a. Black,
a.k.a. D,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 20, 2006)**

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Appellants Fabian Corriette and Darran Lamar Moore appeal their convictions for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (iii) and 846. Moore also appeals his sentence. After review, we affirm.

## I. BACKGROUND

The Federal Bureau of Investigation began investigating a large drug distribution operation that sold cocaine and crack from "drug holes" in the Carol City area of Miami. Allen Ross was the initial target of the investigation, which involved surveillance, confidential informants and wiretaps. The investigation resulted in a 24-defendant indictment, including Ross and Appellants Corriette and Moore. Ross pled guilty and agreed to cooperate with the government and testify against Corriette and Moore.

At trial, Ross testified to his dealings with Appellants Corriette and Moore during the drug conspiracy. The district court also admitted evidence of wiretapped telephone conversations among various members of the drug conspiracy, including Ross, Corriette and Moore, and evidence of Corriette's and

Moore's prior drug convictions. The jury found Corriette and Moore guilty. The district court sentenced Corriette to 121 months' imprisonment and Moore to life imprisonment. This appeal followed.

## II. DISCUSSION

### A. Motion to Suppress Wiretap Evidence

On appeal, Corriette and Moore challenge the district court's denial of their motion to suppress the wiretap evidence.[1] An application to intercept wire communications submitted to a judge must be authorized by one of the officials listed in 18 U.S.C. § 2516. This list includes "any Deputy Assistant Attorney General . . . in the Criminal Division specially designated by the Attorney General." See 18 U.S.C. § 2516(1). In Order No. 2407-2001, the Attorney General specially designated "any Deputy Assistant Attorney General of the Criminal Division" to authorize wiretap applications. Here, the wiretap applications were authorized by Bruce Swartz, the Deputy Assistant Attorney General of the Criminal Division. Thus, the wiretap applications were authorized by an official designated in § 2516(1).

---

[1]We review de novo the legal sufficiency of a wiretap application presented to a district court. See United States v. Butler, 102 F.3d 1191, 1198 (11th Cir. 1997) (reviewing de novo the sufficiency of an affidavit supporting a search warrant). We review the district court's failure to grant an evidentiary hearing on a motion to suppress for an abuse of discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000).

3

Appellants argue that Swartz's wiretap authorizations were flawed because Swartz's signatures were affixed with a rubber stamp. On the two authorization memoranda, Swartz's signatures appear above the stamp bearing his name and title. The two signatures are visibly different from each other and one signature overlaps the stamp while the other does not. Even a cursory review of these signatures indicates that they were not affixed with a rubber stamp.

Appellants stress that the memoranda appear to have been authored by and/or prepared for the signature of Christopher Wray, the Acting Assistant Attorney General in the Criminal Division. We see no material significance to the fact that Wray's name also appears on the memoranda because Wray's signature lines remained blank. Swartz's signature, name and title appeared below Wray's signature lines. Thus, Swartz did not sign for Wray, but for himself, and Swartz was one of the designated officials who may authorize a wiretap application.

We also reject Appellants' contention that the wiretaps were not necessary. An application for an order authorizing a wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The affidavit supporting an application need not show a "comprehensive exhaustion of all possible techniques," but need

4

explain only the failure of those techniques "that reasonably suggest themselves." United State v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986).

Here, the government's statements attached to the wiretap applications were sufficient. In the affidavits attached to the applications, FBI Special Agent Kevin O'Rourke accounted for the failure of multiple alternative techniques, including (1) confidential sources, (2) surveillance, (3) pen register analysis, (4) grand jury subpoenas, (5) undercover agents, (6) search warrants, (7) interviews of the targets, and (8) "trash pulls." Agent O'Rourke specifically stated that the confidential sources were unlikely to ascertain the scope of the conspiracy or the identities of the participants as none were trusted members of the organization in whom Ross would confide. Surveillance also had failed, as lookouts spotted the officers conducting the surveillance. The second affidavit seeking continued authorization noted that the wiretap had yielded recordings of Ross discussing his observation of police officers attempting surveillance.

Finally, the Appellants have not shown that the district court erred by not holding a hearing. A motion to suppress "must allege facts which, if proven, would provide a basis for relief. A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing." United States v. Richardson, 764 F.2d 1514,

5

1527 (11th Cir. 1985) (citation omitted).  The only specific factual allegation contained in Appellants' motion to suppress dealt with the government's failure to have the authorization memoranda signed.  As noted above, that contention is clearly without merit.  The remainder of the motion contained legal arguments and conclusory statements.  Therefore, the district court did not abuse its discretion in not holding a hearing.

We conclude that Appellants have shown no reversible error in the district court's denial of Appellants' motion to suppress.

## B.     Admission of Prior Convictions

During its case in chief, the government introduced evidence that Corriette and Moore each had a prior cocaine conviction.  Appellants have not shown that the district court abused its discretion in admitting their prior convictions under Rule 404(b).[2]

To be admissible under Rule 404(b), the extrinsic offense: (1) must be relevant to an issue other than the defendant's character; (2) must be proved; and (3) must possess probative value that is not substantially outweighed by its undue

---

[2]Federal Rule of Evidence 404(b) provides in relevant part that:
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .
Fed. R. Evid. 404(b).  We review a district court's admission of Rule 404(b) evidence for abuse of discretion.  United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000).

prejudice and must meet the other requirements of Rule 403.[3] United States v. Matthews, 431 F.3d 1296, 1310-11 (11th Cir. 2005).

First, Appellants were charged with conspiracy and pled not guilty, making intent a material issue. See id. at 1311 (concluding that, in the context of a conspiracy charge, when the defendant pleads not guilty, he makes his intent a material issue satisfying the first prong of the Rule 404(b) test); United States v. Delgado, 56 F.3d 1357, 1365-66 (11th Cir. 1995). Second, Appellants do not dispute that the government proved their prior cocaine convictions. Third, Appellants have not shown that the probative value was substantially outweighed by undue prejudice. In fact, the government showed a need for the prior conviction evidence, and the district court gave a limiting instruction. See Matthews, 431 F.3d at 1312; United States v. Diaz-Lizaraza, 981 F.2d 1216, 1225 (11th Cir. 1993).

## C. "Buyer/Seller" Jury Instruction

Moore argues that the district court erred in refusing to give the jury a "buyer/seller" instruction.[4] "Even if a requested jury instruction is proper, the trial court has some discretion in framing the instruction. If the charge to the jury adequately and correctly covers the substance of the requested instruction, there is

---

[3]Apellants do not contend that the other requirements of Rule 403 have not been met.

[4]"We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Trujillo, 146 F.3d 838, 846 (11th Cir. 1998).

no reversible error." United States v. Lively, 803 F.2d 1124, 1128 (11th Cir. 1986) (affirming district court's refusal to give a "buyer/seller" instruction where the district court had instructed the jury on the elements of a drug conspiracy).

Here, the district court gave a pattern jury instruction on drug conspiracy that instructed the jury on the elements of the crime. As in Lively, the drug conspiracy instruction adequately addressed the substance of Moore's requested "buyer/seller" instruction because it noted that a single act does not constitute participation in the conspiracy. See id. at 1128-29. Therefore, the district court did not abuse its discretion when it refused to give Moore's requested "buyer/seller" instruction.

**D.    Cumulative Effect of Evidentiary Rulings**

Moore also argues that the cumulative prejudice of several of the district court's evidentiary rulings warrants reversal of his conviction. Specifically, Moore points to: (1) the failure to correct "improper innuendo" due to a witness's reference to the indictment; (2) the admission of hearsay statements; and (3) the admission of his prior cocaine trafficking conviction. As discussed above, the prior conviction was admissible. We also conclude that the district court did not err with regard to the other evidentiary rulings Moore relies upon.

As to the indictment reference, Danny Maynard, one of Moore's co-

8

defendants who pled guilty, testified for the government during the trial. The government asked Maynard whether he knew any other individuals named in the indictment. Moore objected, arguing that it was improper to ask with whom Maynard had been indicted, and requested a limiting instruction. Instead, the district court asked the government to rephrase its question. The government then asked Maynard whether he knew the various people in his case. Moore objected again, but was overruled.

On appeal, Moore contends that the district court should have given a limiting instruction to remedy the government's reference to the indictment. However, Moore does not explain how the reference to the indictment was improper or prejudiced him. More importantly, at the outset of the case, the jury was instructed that the indictment was only an accusation and was not proof of guilt. The district court later reiterated that point during its jury instructions. The district court's failure to give a limiting instruction as a result of this stray reference to the indictment was not error. See United States v. Snyder, 291 F.3d 1291, 1294 (11th Cir. 2002) (concluding that district court did not abuse its discretion in denying defendant's motion for a mistrial after prosecutor questioned witness about the defendant's indictment).

As to the hearsay issue, Ross testified about conversations that he had with

other suppliers and sellers of drugs with whom he directly did business even though Moore was not present during the conversations. The government contends that it showed a drug conspiracy and that the district court properly admitted Ross's testimony as non-hearsay co-conspirator statements under Rule 801(d)(2)(E).

Under Rule 801, statements of co-conspirators made during the course and in the furtherance of the conspiracy are not hearsay. See Fed. R. Evid. 801(d)(2)(E). To admit evidence under Rule 801(d)(2)(E), the government must show by a preponderance of the evidence that "(1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." United States v. Hasner, 340 F.3d 1261, 1274 (11th Cir. 2003).[5]

On appeal, Moore contends that Ross's testimony was inadmissible hearsay because the government failed to show that the declarants of the out-of-court statements were members of the drug conspiracy charged in the indictment. We disagree. First, much of Ross's challenged testimony concerned conduct of

_____

[5]We review a district court's decision to admit statements of co-conspirators under Rule 801(d)(2)(E) for abuse of discretion. Hasner, 340 F.3d at 1274. We review for clear error whether a statement was made in furtherance of a conspiracy. United States v. Byrom, 910 F.2d 725, 734 (11th Cir. 1990).

The government's brief points out that Moore's brief fails to identify sufficiently the hearsay statements that the district court improperly admitted except in one or two instances. We need not address this issue as we discern no reversible error in any event.

10

purported co-conspirators and not statements by them and thus is not hearsay.

Second, Ross testified that Moore gave him (1) money to purchase cocaine from suppliers, which Ross then distributed, and (2) "cut," which Ross used in repackaging the cocaine for resale. The declarants of the out-of-court statements to which Ross testified also either supplied Ross with cocaine or "cut" or sold cocaine that Ross provided. Based on this testimony, there was some evidence that the out-of-court declarants were involved in an existing conspiracy to distribute cocaine involving Ross and Moore and that Ross's conversations with the declarants were made in furtherance of that conspiracy. Therefore, the district court did not err in admitting Ross's testimony about conversations he had with other co-conspirators.

Alternatively, even assuming there was insufficient evidence linking the declarants to the charged conspiracy, the admission of the statements was harmless error.[6] The statements did not incriminate Moore. Furthermore, the government's evidence of Moore's guilt was substantial given the significant wiretap evidence and the testimony of co-conspirators Ross and Maynard. Under these circumstances, we cannot say that the admission of the particular statements at issue here had a substantial influence on the outcome of the trial.

---

[6]We will not reverse an erroneous evidentiary ruling that is harmless. United States v. Dickerson, 248 F.3d 1036, 1048 (11th Cir. 2001) An error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." Id. (citation and internal quotation marks omitted).

11

## E. Moore's Sentence

Moore contends that the government failed to give adequate notice of its intent to seek a life sentence. Under 21 U.S.C. § 841(b)(1)(A), when a defendant is convicted of violating 21 U.S.C. § 846 and has two prior convictions for felony drug offenses, the defendant faces a mandatory life sentence. 21 U.S.C. §§ 841(b)(1)(A) & 846. Before the government may seek that life sentence, it must (1) file an information and serve a copy of such information on the defendant or his counsel; and (2) provide notice to the defendant specifying the defendant's previous convictions before the trial commences or the defendant enters a guilty plea. See 21 U.S.C. § 851(a)(1). Moore claims that the government's § 851 notice was deficient because it identified one of his two prior felony drug convictions by the wrong case number.[7]

The government's § 851 notice stated that Moore had been convicted on or about February 18, 1992 in the Nineteen Judicial Circuit of Florida for trafficking in cocaine, case number 91-000766-FA. The correct case number was 91-758CFC. Moore does not dispute that he was convicted of cocaine trafficking in the Nineteenth Judicial Circuit of Florida on the specified date and does not allege any confusion as to what conviction the government was referring, despite the incorrect

---

[7]We review the adequacy of a § 851 notice de novo. United States v. McLean, 138 F.3d 1398, 1406 (11th Cir. 1998).

case number. We conclude that the information contained in the § 851 notice was sufficient to indicate unambiguously the prior conviction on which the government would rely in seeking the enhanced sentence. See Perez v. United States, 249 F.3d 1261, 1266-67 (11th Cir. 2001) (concluding that § 851 notice was sufficient where government identified prior conviction, but erroneously stated the wrong year for the conviction).[8]

We also reject Moore's contention that the § 851 notice was inadequate because the government cited all three sentencing provisions of 21 U.S.C. § 841. The government included a citation to 21 U.S.C. § 841(b)(1)(A), which was sufficient to put Moore on notice that he faced a possible mandatory life sentence upon conviction.

For all of these reasons, we affirm the convictions and sentences of Corriette and Moore.

**AFFIRMED.**

---

[8]In Perez, the government's § 851 notice correctly listed the prior conviction as being a cocaine conviction in Florida. The notice also correctly identified the day and month of the conviction, but identified the year as 1992, when it was in fact 1991. Perez, 249 F.3d at 1263. We concluded that the government's notice "satisfied the requirements of § 851(a)(1)." Id. at 1266. In Moore's case, the § 851 notice correctly listed the offense as cocaine trafficking, the jurisdictional district in Florida and the date of conviction. Given all of these items were correct and given Perez, we cannot say here that the § 851 notice with a wrong case number was insufficient.